IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                               No.  14-cr-0931 MCA
                                                                      16-cv-1067 MCA/SMV

MATTHEW J. HOLMES,

    Defendant.

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Defendant Matthew J. Holmes's Motion to Vacate, Set Aside, or Correct Sentence, filed September 26, 2016. [CR Doc. 69; CV Doc. 1]. The United States responded on January 27, 2017. [CR Doc. 77; CV Doc. 8]. Holmes filed a document entitled "Citation of Additional New Authority" on January 30, 2017 [CR Doc. 78; CV Doc. 9] and a reply in support of his motion on March 13, 2017 [CR Doc. 79; CV Doc. 10]. The Honorable M. Christina Armijo, Chief United States District Judge, referred this matter to me for analysis and a recommended disposition. [CV Doc. 2]. Having considered the briefing, relevant portions of the underlying criminal record, and relevant authorities, and being otherwise fully advised in the premises, I recommend that the motion be denied and that case number 16-cv-1067 MCA/SMV be dismissed with prejudice.

## Background

On March 26, 2014, Holmes was charged via indictment with possessing with intent to distribute crack cocaine. [CR Doc. 11]; Presentence Report ("PSR") at 4. On defense counsel's motion, a "Form 13" presentence report was ordered to determine Holmes's offense level,

criminal history, and sentencing range. [CR Doc. 24]. Holmes pleaded guilty to the offense on February 17, 2015, pursuant to a Rule 11(c)(1)(C) plea agreement whereby the parties agreed to a sentencing range of 108–144 months. [CR Doc. 57]. The plea agreement included a waiver of the right to appeal or collaterally attack his conviction and sentence:

> [T]he Defendant knowingly waives the right to appeal the Defendant's conviction and any sentence, including any fine, imposed in conformity with this Fed. R. Crim. P. 11(c)(1)(C) plea agreement, as well as any order of restitution entered by the Court. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver.

*Id.* at 6–7. On September 16, 2015, he was sentenced to 130 months' imprisonment. [Doc. 8-2][1] at 16. Holmes did not appeal his sentence. This instant case is his first motion under § 2255.

Holmes, proceeding pro se, moves for relief pursuant to § 2255. He asserts several claims for ineffective assistance of both his pretrial counsel and sentencing counsel. As to his pretrial counsel, he claims ineffective assistance based on counsel's failure to (1) conduct a pretrial investigation; (2) interview potential witnesses for trial; (3) communicate with Holmes and inform him of the consequences of pleading guilty versus going to trial; and (4) negotiate a more favorable plea agreement. [Doc. 1] at 4. As to his sentencing counsel, he claims ineffective assistance based on counsel's failure to (1) discuss the PSR with Holmes prior to sentencing; (2) challenge his career offender sentencing enhancement; and (3) file a notice of appeal, despite Holmes's request that counsel do so. *Id.* at 5.

---

[1] Unless specifically noted otherwise, citations to document numbers refer to the docket in the civil case, case number 16-cv-1067 MCA/SMV.

In response, the government argues that the appellate waiver bars several of Holmes's claims, namely all those pertaining to his sentencing counsel and the claim pertaining to his pretrial counsel's failure to investigate. [Doc. 8] at 4–7. The government moves to enforce the waiver as to these claims, which it contends do not fall under the exception of "ineffective assistance in negotiating or entering [the] plea or waiver." *Id.*; [CR Doc. 57] at 7. As to the remaining claims, the government argues that Holmes fails to show that his representation was deficient or that he was prejudiced by any alleged ineffective assistance. [Doc. 8] at 9–10.

## Motions Under § 2255

A petition under 28 U.S.C. § 2255(a) attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A litigant who appears pro se is entitled to a liberal construction of his allegations, though courts must apply the same legal standards applicable to filings drafted by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1999). However, courts are "not required to fashion [a pro se litigant's] arguments for him where his allegations are merely conclusory in nature and without supporting fact[s]." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110.

## Legal Standards

### Ineffective Assistance of Counsel

The test for making a claim of constitutionally ineffective assistance of counsel was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.

466 U.S. at 687. Both showings must be made to satisfy the *Strickland* standard. *Id.* The Court need not address both prongs of the standard if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. In applying the two-part *Strickland* test, a court may address the performance and prejudice components in any order. *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).

Under the first prong, a defendant must demonstrate that his counsel's performance was deficient. The appropriate standard for attorney performance is that of reasonably effective assistance; the defendant must demonstrate that counsel's representation, considering all the circumstances, fell below an objective standard of reasonableness based on prevailing professional norms. *See Strickland*, 466 U.S. at 687–88. For counsel's performance to be constitutionally ineffective, it must have been "completely unreasonable, not merely wrong." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (quoting *Hatch v. Oklahoma*,

58 F.3d 1447, 1459 (10th Cir. 1995)). In evaluating an attorney's performance, the Court must be highly deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

In applying this test, the Court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. "Neither hindsight nor success is the measure" of whether counsel was effective, and "effective" is not synonymous with victorious or flawless. *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994). Rather, to be considered *ineffective* assistance of counsel, "the representation must have been such as to make the trial a mockery, sham, or farce, or resulted in the deprivation of constitutional rights." *Id*. (citing *Lorraine v. United States*, 444 F.2d 1, 2 (10th Cir. 1971)).

In order to satisfy the second prong of *Strickland*, a defendant asserting ineffective assistance of counsel must also affirmatively prove prejudice. *Strickland*, 466 U.S. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional

5

errors, the result of the [trial] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Defendants are entitled to effective assistance of counsel during the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012). As with other ineffective assistance of counsel claims, the two-pronged *Strickland* test applies. To establish prejudice in the context of pleas, a defendant must "show that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). Moreover, due process requires that a defendant's plea of guilty be "voluntary and knowing." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969). Otherwise, the plea of guilty is void. *Id.* "[T]he longstanding test for determining the validity of a guilty plea . . . is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010) (quoting *Hill*, 474 U.S. at 56) (internal quotation marks omitted).

### Waiver of Collateral Attack

Waivers of § 2255 rights in a plea agreement are "generally enforceable." *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001). A defendant may not waive the right to bring a § 2255 petition based on an ineffective-assistance-of-counsel claim challenging the validity of the plea or the waiver itself. *Id.* at 1187. However, collateral attacks falling outside of that category are waivable, so long as the waivers are made expressly in plea agreements. *Id.* at 1187 & n.4. In evaluating whether a defendant's § 2255 claim is barred by waiver, courts undertake a three-pronged analysis to determine: (1) whether the disputed claim falls within the

scope of the waiver; (2) whether the defendant knowingly and voluntarily waived his rights; and (3) whether enforcing the waiver would result in a miscarriage of justice. *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (citing *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004)).

As to the first prong, to determine the scope of waiver, courts "apply principles of contract law and examine the plain language of the plea agreement." *United States v. Pam*, 867 F.3d 1191, 1201 (10th Cir. 2017). Courts will "strictly construe" the scope of the waiver, and "any ambiguities in these agreements will be read against the Government and in favor of a defendant's [collateral attack] rights." *Hahn*, 359 F.3d at 1325 (quoting *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (en banc)); *see also Pam*, 867 F.3d at 1201. As to the second prong, the defendant bears the burden of presenting evidence that he did not knowingly and voluntarily enter the plea agreement or understand the waiver of his collateral attack rights. *Hahn*, 359 F.3d at 1329. Finally, as to the third prong, a miscarriage of justice occurs where (1) the court relied on an impermissible factor such as race; (2) ineffective assistance of counsel in connection with negotiating the waiver renders the waiver invalid; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful. *Id.* at 1327. To show that a waiver is "otherwise unlawful," the defendant must show that "the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

## Analysis[2]

### Ineffective Assistance of Pretrial Counsel

Holmes makes several claims for ineffective assistance of counsel regarding his pretrial counsel's performance during the plea-bargaining process. Specifically, he argues that his pretrial counsel failed to (1) "conduct an adequate and independent pretrial investigation," (2) "inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial," (3) "interview potential defense witnesses for trial," and (4) "[a]ttempt to negotiate a more favorable plea agreement." [Doc. 1] at 4. I find that Holmes fails to satisfy either prong of the *Strickland* standard as to any of these claims, each of which I consider more fully below.

*Failure to Investigate[3] and Failure to Interview Potential Witnesses*

Holmes alleges that his pretrial counsel failed to conduct a pretrial investigation and failed to interview potential defense witnesses for trial. *See id.* But he does not explain how his counsel's investigation was inadequate or what witnesses he might have interviewed. His conclusory allegations do not suffice to establish constitutionally deficient performance. *See Hatch*, 58 F.3d at 1459, 1471–72 (allegations of ineffective assistance must be specific and particularized; conclusory allegations are insufficient and do not warrant an evidentiary hearing);

---

[2] No evidentiary hearing is required in this case. An evidentiary hearing is required on a § 2255 motion where there are factual issues in dispute that, if proven, would entitle the defendant to relief. *United States v. Gallegos*, 459 F. App'x 714, 716–17 (10th Cir. 2012); *see also Brecheen v. Reynolds*, 41 F.3d 1343, 1362 (10th Cir. 1994). Mere conclusory allegations are insufficient to warrant a hearing. Holmes fails to allege any such factual disputes with the particularity and specificity required to warrant a hearing.
[3] The government argues that Holmes's claim for failure to investigate is "arguably" within the scope of his waiver of appellate and collateral attack rights. [Doc. 8] at 4. Given the government's equivocal language on this point, I assume that the waiver does not bar this claim and I consider it on the merits under the *Strickland* standard.

*Fisher*, 38 F.3d at 1147 (The court is not required to "fashion [d]efendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments.").

Even if these bare allegations satisfied the first prong of *Strickland*, Holmes fails to show that he was prejudiced by the alleged failure to investigate or interview potential witnesses. He does not, for example, identify any legal or factual defense that might have been developed through pretrial investigation. He does not indicate what evidence may have been recovered or what possible witnesses his counsel might have been able to identify, much less state how any such information would have altered the plea bargaining process. The "mere speculation" that further investigation would have aided his defense "is not sufficient to demonstrate prejudice." *United States v. Clark*, 596 F. App'x 696, 701 (10th Cir. 2014); *see also United States v. Belin*, 661 F. App'x 923, 924 (10th Cir. 2016) (denying a certificate of appealability on ineffective-assistance claim where defendant did not say how he was prejudiced by his pretrial counsel's failure to investigate and encouragement that defendant plead guilty).

Moreover, to establish prejudice, Holmes was required to show a reasonable probability that but for the alleged error, he would not have pleaded guilty and instead would have insisted on going to trial. *See Hill*, 474 U.S. at 58–59. Holmes does not do so. He makes no assertion that he would have rejected the plea and proceeded to trial had his counsel conducted a better pretrial investigation or identified witnesses. And, even if he had, Holmes was also required to show that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Holmes makes no such

showing. *See Clark*, 596 F. App'x at 701–02 (defendant's allegation that he would have gone to trial but for counsel's errors was insufficient because he had not shown that rejecting the plea would have been rational, given the "evidence and the significant benefits which defendant received" as part of the plea agreement).

*Failure to Negotiate a More Favorable Plea Agreement*

Holmes also alleges that his pretrial counsel was ineffective for failing to attempt to negotiate a better plea agreement. [Doc. 1] at 4. This claim fails for largely the same reasons as the failure-to-investigate claims. As an initial matter, as the government argues, Holmes received a favorable plea agreement. He faced a statutory mandatory minimum of 60 months and a statutory maximum of 480 months. PSR at 2. With the career offender enhancement, his advisory sentencing range under the United States Sentencing Guidelines ("Guidelines") was 188–235 months.[4] [Doc. 8] at 7. Through the plea agreement, the parties agreed to a sentencing range of 108–144 months. [CR Doc. 57]. Ultimately, Holmes received a sentence of 130 months. His sentence was well below the bottom of the applicable Guidelines range, and Holmes fails to show how his counsel's negotiations amounted to ineffective assistance. *See, e.g.*, *United States v. Garcia*, 413 F. App'x 57, 60 (10th Cir. 2011) (no ineffective assistance for failure to negotiate where the defendant's 180-month sentence was 30 months below the bottom of the pertinent Guidelines range). Moreover, Holmes fails to show how he was prejudiced by his counsel's alleged failure to negotiate. He does not argue that but for the alleged deficiency

---

[4] His Guidelines range was initially reported to be 235–293 months. *See* PSR at 18; [Doc. 8-2] at 16. However, at the sentencing hearing, Holmes's counsel objected to the "special offense characteristics" and "victim related adjustment" sentencing enhancements. [Doc. 8-2] at 4–9. The government did not dispute counsel's objections, and the findings in the PSR were modified accordingly. Absent those enhancements, Holmes's Guidelines range was 188–235 months.

he would not have pleaded guilty and instead would have insisted on going to trial. *See Hill*, 474 U.S. at 58–59. Again, his bare allegations are insufficient to satisfy the *Strickland* standard.

*Failure to Communicate the Consequences of Pleading Guilty*

Finally, Holmes alleges that his pretrial counsel was ineffective for failing to inform him of the consequences of pleading guilty versus going to trial. [Doc. 1] at 4. In his reply, he elaborates that he "lacked the knowledge he needed to make an informed decision of whether to plead guilty." [Doc. 10] at 4. Instead, he alleges, his attorney advised him "that he had to plead guilty or he would be facing a significantly harsher sentence." *Id.* He claims that his counsel told him "to agree with the judge at the Change of Plea Hearing and not to make any waves because he might upset [the judge] and [the judge] might not accept his plea of guilty." *Id.* Essentially, Holmes contends that his plea was not made knowingly and voluntarily.

While not "decisive," "[t]he procedures under which a challenged plea was taken play an important . . . role in determining the validity of the plea." *Tovar Mendoza*, 620 F.3d at 1269. "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)). "[S]olemn declarations in open court carry a strong presumption of verity." *Id.* (quoting *Blackledge*, 431 U.S. at 74).

Holmes's allegations that his plea was not knowing and voluntary are belied by the record. At his plea hearing on February 17, 2015, the Honorable Kirtan Khalsa, United States Magistrate Judge, conducted an extensive plea colloquy, which included the following:

THE COURT: Sir, you're in court today because your attorney has indicated that you wish to enter a change of plea to the charges against you, but I need you to understand that you're entirely free to plead not guilty. Do you understand that?
THE DEFENDANT: Yes, your Honor.

. . . .

THE COURT: Now, if you decide to go forward and plead guilty today, you will be giving up a number of rights. . . . If you plead guilty, there will be no trial and you will give up all of the rights to a jury trial that I've just described to you. Do you understand that?
THE DEFENDANT: Yes, your Honor.

. . . .

THE COURT: There are other important consequences of entering into a guilty plea. . . . Have you discussed all of these consequences with your attorney?
THE DEFENDANT: Yes.
THE COURT: And do you understand the consequences that I've described?
THE DEFENDANT: Yes.

. . . .

THE COURT: Did you attorney explain the plea agreement to you and answer all of your questions to your satisfaction before you signed it?
THE DEFENDANT: Yes, she did.
THE COURT: Do you understand each and every term of your plea agreement?
THE DEFENDANT: I do.

. . . .

THE COURT: Have you spoken to your attorney about the facts and circumstances of your case?
THE DEFENDANT: Yes.
THE COURT: Did you go over what the Government would have to prove for you to be found guilty beyond a reasonable doubt?
THE DEFENDANT: Yes.
THE COURT: Did you go over the Government's evidence with your attorney and the discovery that was provided by the Government?
THE DEFENDANT: Yes, ma'am.
THE COURT: Did you discuss all of your possible defenses with your attorney?
THE DEFENDANT: Yes.

> THE COURT: Did you have enough time to discuss your case with your attorney?
> THE DEFENDANT: Yes.
> THE COURT: And did your attorney answer all of your questions?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Are you completely satisfied with your attorney's advice and representation?
> THE DEFENDANT: I am.
> . . . .
> THE COURT: Is anyone forcing you or has anyone threatened you to get you to plead guilty?
> THE DEFENDANT: No.
> THE COURT: Has anyone made any promises to get you to plead guilty that are not contained within this plea agreement or any addendum?
> THE DEFENDANT: No, your Honor.
> THE COURT: Have you understood everything that I have explained to you or asked you today?
> THE DEFENDANT: Yes, your Honor.

[Doc. 8-1]. A review of the extensive plea colloquy conducted during the plea hearing establishes that Holmes's guilty plea was free from force or threat and entered into with the requisite understanding. Holmes affirmed that he had reviewed the facts and circumstances of the case. Judge Khalsa reviewed the sentencing consequences that Holmes could face by pleading guilty; Holmes affirmed that he understood them. Judge Khalsa discussed other consequences of pleading guilty; Holmes verified that he had discussed such consequences with his attorney and understood them. Judge Khalsa determined that Holmes was aware of the nature of the charges against him and the consequences of pleading guilty, and she found his plea to be knowing and voluntary. *Id.* at 16. I find that Holmes's plea was knowing and voluntary. Holmes fails to show that his counsel's performance was constitutionally deficient. *See United States v. Kutilek*, 260 . App'x 139, 145 (10th Cir. 2008) (relying on plea colloquy to find

that defendant's plea was knowing and voluntary); *United States v. Silva*, 430 F.3d 1096, 1099–1100 (10th Cir. 2005) (new information appearing in defendant's PSR concerning his criminal history did not render plea unknowing or involuntary, nor did counsel's erroneous prediction that the defendant's criminal history would not be used by the government to calculate his Guidelines sentencing range).

Even if his counsel's performance had been deficient, Holmes fails to establish any prejudice from the alleged errors. He has made no showing that he would have elected to forgo his guilty plea and proceed to trial absent counsel's alleged deficient performance. Holmes has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance of his pretrial counsel under *Strickland*.

### Ineffective Assistance of Sentencing Counsel

In his second ground for relief, Holmes makes several claims for ineffective assistance regarding his sentencing counsel's performance. He argues that his sentencing counsel failed to (1) discuss the PSR with Holmes prior to sentencing; (2) challenge his career offender sentencing enhancement; and (3) file a notice of appeal, despite Holmes's request that counsel do so. [Doc. 1] at 5. As to these claims, the government seeks to enforce the waiver of the right to collaterally attack his conviction and sentence. I find that the waiver is enforceable as to these claims, and Holmes is barred from asserting such claims.

In evaluating whether a defendant's § 2255 claim is barred by waiver, courts must consider (1) whether the disputed claim falls within the scope of the waiver; (2) whether the

defendant knowingly and voluntarily waived his rights; and (3) whether enforcing the waiver would result in a miscarriage of justice. I consider each of these prongs below.

*Scope of the Waiver*

First, I consider whether the claims fall within the scope of the waiver. While the scope of the waiver will be narrowly construed, defendants will be held to the terms of a lawful plea agreement. *Hahn*, 359 F.3d at 1328. In pertinent part, the waiver provides, "Defendant agrees to waive any collateral attack to the Defendant's conviction and any sentence . . . except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver." [CR Doc. 57] at 6–7. By its plain language, the waiver extends to § 2255 motions in connection with Holmes's sentence. In line with the dictates of *Cockerham*, 237 F.3d at 1187, the waiver provides an exception for ineffective-assistance-of-counsel challenges to the validity of the plea or the waiver. Holmes's ineffective-assistance claims as to his sentencing counsel do not challenge the validity of the plea or waiver. They concern matters that occurred after the entry of the plea and waiver. Thus, these claims fall within the scope of the waiver in the plea agreement. *See, e.g.*, *United States v. Salazar*, 311 F. App'x 110, 112–13 (10th Cir. 2009) (defendant's waiver of right to appeal or collaterally attack conviction or sentence barred his § 2255 motion challenging his career offender sentencing enhancement); *Viera*, 675 F.3d at 1218–19 (defendant's waiver barred his § 2255 motion alleging ineffective assistance of counsel based on his counsel's failure to file an appeal, despite defendant's request that he do so, because "the failure to file an appeal does not undermine the validity of the plea or the waiver").

*Knowing and Voluntary*

Next, I consider whether Holmes's waiver of his collateral attack rights was knowing and voluntary. I have already found, supra, that Holmes entered into his plea agreement freely, understanding the facts and circumstances of his case and the consequences of pleading guilty. His guilty plea was made knowingly and voluntarily. I now find that his waiver of the right to appeal and collaterally attack his conviction and sentence was made knowingly and voluntarily. During the plea colloquy, Judge Khalsa questioned Holmes specifically on the waiver, as follows:

> THE COURT: Ordinarily when a person is found guilty they retain the right to appeal their conviction and the sentence that is imposed. However, if you go forward with your plea agreement in this case, [you would be] giving up your right to appeal your conviction and any sentence . . . . Do you understand that waiver of appeal rights?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: You would also be giving up your rights to any collateral attack to your conviction and any sentence, including any fine, pursuant to [28 U.S.C. §] 2241 or 2255, or any other extraordinary writ, except on the issue of your counsel's ineffective assistance in negotiating or entering this plea agreement or this waiver. Do you understand that?
> THE DEFENDANT: Yes.

[Doc. 8-1] at 12–13. Holmes thus acknowledged that he understood the waiver of his right to appeal and collaterally challenge his conviction and sentence. Nothing in the record suggests that Holmes's plea or waiver of post-conviction rights was unknowing or involuntary. Holmes bears the burden of demonstrating that his waiver was not knowing and voluntary, and he has failed to meet this burden. *See United States v. Smith*, 500 F.3d 1206, 1210 (10th Cir. 2007). He has not rebutted the "strong presumption of verity" as to the declarations he made in open court

16

regarding his plea agreement and waiver. *Tovar Mendoza*, 620 F.3d at 1269; *see also, e.g.*, *Kutilek*, 260 F. App'x at 145 (relying on defendant's plea colloquy to find that waiver of post-conviction rights was knowing and voluntary). It cannot be said that Holmes did not "fully understand[] the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it." *Hahn*, 359 F.3d at 1327 (quoting *United States v. Ruiz*, 536 U.S. 622, 629 (2002)).

*Miscarriage of Justice*

Finally, I consider whether enforcement of the waiver would result in a miscarriage of justice. A miscarriage of justice occurs only where (1) the court relied on an impermissible factor such as race; (2) ineffective assistance of counsel in connection with negotiating the waiver renders the waiver invalid; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful. *Hahn*, 359 F.3d at 1327. Holmes shows none of these circumstances. He does not allege, and there is no indication, that the court relied on an impermissible factor such as race. I have already considered, and rejected, Holmes's claims of ineffective assistance of counsel in connection with negotiating the plea or waiver. Holmes's sentence of 130 months is well below the statutory maximum of 480 months and the bottom of the applicable Guidelines range. And Holmes offers no other argument as to the unlawfulness of the waiver.[5]

---

[5] In his "Citation of Additional New Authority," Holmes contends that the Guidelines' career offender enhancement should not have been applied in calculating his Guidelines' sentencing range. *See* [Doc. 9] at 9–10. He suggests that without the career offender enhancement, his total offense level would have been 24, with a criminal history category of III, yielding a Guidelines range of 63–78 months, a range far lower than the sentence he received. *Id.* at 10. There are a number of problems with this argument beyond the fact that Holmes waived the right to collaterally attack his sentence. Holmes relies solely on a Fifth Circuit case holding that a Texas law making it a

17

I find that Holmes's claims regarding ineffective assistance are within the scope of the waiver in his plea agreement; that the plea agreement and waiver were made knowingly and voluntarily; and that enforcement of the waiver would not result in a miscarriage of justice. Therefore, I find that the waiver of post-conviction rights is enforceable and bars the claims for ineffective assistance of counsel as to Holmes's sentencing counsel.

**IT IS THEREFORE RECOMMENDED** that Defendant Matthew J. Holmes's Motion to Vacate, Set Aside, or Correct Sentence [CR Doc. 69; CV Doc. 1] be **DENIED** and that case number 16-cv-1067 MCA/SMV be **DISMISSED with prejudice**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**

---

crime to "knowingly manufacture[], deliver[], or possess[] with intent to deliver a controlled substance" did not qualify as a "controlled substance offense" under the Guidelines, and thus could not serve as a predicate offense for the career offender enhancement. *United States v. Hinkle*, 832 F.3d 569, 572, 576–77 (5th Cir. 2016). The court held that the "delivery" element rendered the offense overbroad. *Id.* at 576–77. Contrary to Holmes's suggestion, his career offender enhancement was not predicated on a conviction under the Texas statute at issue in *Hinkle*. Rather, his predicate controlled substance offense was attempt to traffic cocaine in New Mexico. *See* PSR at 7. His argument is unavailing. *See also United States v. Cortez*, 72 F. App'x 805, 806 (10th Cir. 2003) (attempted cocaine trafficking qualified as a predicate offense toward defendant's career offender enhancement). Moreover, it is unclear how Holmes arrived at a total offense level of 24. Even absent the career offender enhancement, an offense carrying a statutory maximum of 25 years or more (as here) has an offense level of 34. *See* Guidelines § 4B1.1(b); PSR at 8. Less the reductions for acceptance of responsibility, it appears to me that Holmes's total offense level would have been 31. An offense level of 31 with a criminal history category of III would have yielded a Guidelines sentencing range of 135–168 months. Holmes's ultimate sentence of 130 months was below even that range. Thus, even if Holmes had not waived the right to challenge his career offender enhancement—or his counsel's failure to challenge the enhancement at sentencing—it appears to me that any claims on this matter would be unsuccessful.